Robert A. **HAMILTON** and Kathleen M. Roberts, Appellants,

v.

**BS & W, a Kentucky Partnership Comprised of Bernard Brancaccio, Raymond Sabbatine and David A. Weinberg, Appellee.**

No. 92–CA–001793–MR.

Court of Appeals of Kentucky.

Oct. 22, 1993.

Discretionary Review Denied by Supreme Court March 16, 1994.

Joseph B. Murphy, Steven F. Vicroy, Murphy & Enlow, Lexington, for appellants.

David A. Weinberg, Weinberg & Capello, Lexington, for appellee.

Before LESTER, C.J., and HUDDLESTON and McDONALD, JJ.

OPINION

LESTER, Chief Judge.

This is an appeal from a judgment supported by findings of fact and conclusions of

law interpreting a contract to purchase real estate.

Appellants, Robert Hamilton and Kathleen Roberts, entered into a contract for the purchase of real estate situated on 2100 Oxford Circle in Lexington as evidenced by a Uniform Real Estate Sales and Purchase Contract form prepared for such transactions by the Lexington Board of Realtors. The purchase price was $230,000 with $5,000 paid as "good faith" money upon the execution of the agreement. Under section three of the contract entitled "Financing Conditions" the following language is found:

3. FINANCING CONDITIONS: The balance of purchase price will be as follows:

(a) CASH ×: The balance of the purchase price in the amount of $75% of Sale Price shall be paid on delivery of deed.

(b) NEW FINANCING X RH; Balance of down payment ($25%) on delivery of deed, and mortgage portion of the purchase price as follows:

PURCHASER to obtain a Conventional loan in the amount of $75% of S.P. at an interest rate not to exceed 1% over Prime percent.

(Maximum adjustment for first adjustment period ―― percent, maximum adjustment for life of the loan ―― percent) to be amortized for a period of 20 years, with monthly payments of approximately $?? for principal and interest and a total approximate payment of ?? which would include taxes, insurance and other special assessments. ― agrees to pay necessary discount fee not to exceed ― percent of new loan amount.

Appellants applied for a loan at the Bank of Lexington but it refused to commit a sum equal to 75% of the selling price. One Al Gilchrist, a realtor involved in the transaction, sought other sources for a loan and ended up with an approved application at First Security National Bank and Trust Company which agreed to lend even more than the 75% of the selling price and demanded the following in its letter of commitment:

Term—One year note with a 20 year amortization. At the one year maturity, the bank is under no obligation to refinance this loan at that time. You may therefore, be required to make payment out of other assets that you may own or you will have to find another lender.

Hamilton and Roberts did not consider the foregoing to be a conventional twenty-year loan, so having tried several sources for financing and considering themselves unsuccessful, they abandoned the deal. Thereupon appellee brought an action for specific performance and damages occasioned by delay.

The trial court recognized that the primary issue centered around the meaning of the phrase "amortized for a period of twenty years" as contained in the financing conditions of the contract to purchase. After stating that the plain meaning of the contract must prevail, the court in reaching a legal conclusion, without citing any authority therefor, stated:

Specifically, the only thing mentioned in the writing is the time over which the mortgage was to be amortized. The standard in the banking industry at that time was to amortize loans over longer periods but to make the underlying notes for one year. One principle benefit offered by this was to reduce the amount of the mortgage payment made by the purchaser per month. It also gives a business advantage to the banks because it allows them to adjust the interest rate with each note.

It requires no citation of authority to point out that a note is evidence of an indebtedness and the security therefor is a mortgage. Under the financing conditions the appellants required a conventional loan to be amortized over a period of twenty years. We recognize that this jurisdiction has not specifically defined amortize, so we must look to our standard and legal dictionaries as well as the views of foreign courts.

Webster's New World Dictionary (2nd College Edition, 1978) teaches that amortize means:

To put money aside at intervals, as in a sinking fund, for gradual payment of (a debt, etc.) either at or before maturity. . . .

While Black's Law Dictionary (Rev. 4th Ed. 1968) expresses the view of "amortization" as:

> An alienation of lands or tenements in mortmain. The reduction of the property of lands or tenements to mortmain.
>
> In its modern sense, amortization is the operation of paying off bonds, stock, a mortgage, or other indebtedness, commonly of a state or corporation, by installments, or by a sinking fund. An "amortization plan" for the payment of an indebtedness is one where there are partial payments of the principal, and accrued interest, at stated periods for a definite time, at the expiration of which the entire indebtedness will be extinguished. *Bystra v. Federal land Bank of Columbia*, 82 Fla. 472, 90 So. 478, 480; *Applestein v. royalty Realty Corporation*, 181 Md. 171, 28 A.2d 830, 831.

The sixth edition (1990) of the same work states that "amortization" is:

> In accounting, the allocation (and charge to expense) of the cost or other basis of an intangible asset over its estimated useful life. Intangible assets which have an indefinite life (e.g., goodwill) are not amortizable. Examples of amortizable intangibles include organization costs, patents, copyrights and leasehold interests. A reduction in a debt or fund by periodic payments covering interest and part of principal, distinguished from: (1) depreciation, which is an allocation of the original cost of an asset computed from physical wear and tear as well as the passage of time, and (2) depletion, which is a reduction in the book value of a resource (such as minerals) resulting from conversion into a salable product. The operation of paying off bonds, stock, a mortgage, or other indebtedness, commonly of a state or corporation, by installments, or by a sinking fund. An "amortization plan" for the payment of an indebtedness is one where there are partial payments of the principal, and accrued interest, at stated periods for a definite time, at the expiration of which the entire indebtedness will be extinguished. Compare Depreciation.

Amortization reserve. An account created for bookkeeping purposes to extinguish an obligation gradually over a period of time.

The Florida Courts define an amortization plan for the payment of an indebtedness as one where there are partial payments of the principal and accrued interest at stated periods for a definite time, at the expiration of which the entire indebtedness will be extinguished. *Bystra v. Federal Land Bank of Columbia*, 82 Fla. 472, 90 So. 478 (1921). Georgia expresses the identical view of the same term in *V.E. Brooke v. Phillips Petroleum Co.*, 113 Ga.App. 742, 149 S.E.2d 511, 514 (1966).

From the foregoing we discern the common thread running through all that there are periodic payments for a stated time. We now return to the language in the case at bench.

The parties entered into a contract whereby a condition imposed was that the appellants were to secure a conventional loan for 75% of the selling price amortized over a period of 20 years. After rejection by the Bank of Lexington and several other lenders, First Security agreed to advance sufficient funds but would only definitely commit that money for a period of one year, at the end of which time the note would mature with no obligation to renew it. For that matter that institution put the appellants on notice that twelve months after making the loan they might be required to "make payments out of other assets that you may own or you will have to find another lender." This scheme is designed to impose a different (usually higher) rate of interest and, if the borrowers are unable to afford it, then the loan is called. By no stretch of the imagination or the words "with a 20 year amortization" can we conclude that appellants were offered a conventional loan extending over a definite period of 20 years. If nothing else, we observe a definite ambiguity which must be resolved as vitiating the contract against the interests of the appellees.

Much is made by way of appellees' brief as to what appellants should have or should not have done during the period of negotiations. This is of no consequence because we concern ourselves with the terms of the contract and nothing else.

The judgment is reversed.

All concur.